UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Civil Action #: 15cv04480

-------------------------------------------------------------------------X

KEVIN JAMEL WALSTON, ANGELICA VALENTIN,
R. W., a minor, and P. N., a minor,

                                        Plaintiffs,

                    -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, POLICE OFFICER DAVID GRIECO, SHIELD
#18061 OF THE 75TH PRECINCT, POLICE OFFICER EDGARDO
CARRIERI, SHIELD #18255 OF THE 75TH PRECINCT, POLICE
OFFICER JOSEPH PATTON, SHIELD #895832 OF THE 75TH
PRECINCT, POLICE OFFICER LISA MILES, SHIELD #953108
OF THE 75TH PRECINCT, POLICE OFFICER MICHAEL
GESSNER, SHIELD #940186 OF THE 75TH PRECINCT and
JOHN AND JANE DOE ARRESTING OFFICERS OF THE 75TH
PRECINCT,

                                        Defendants,

-------------------------------------------------------------------------X

**SECOND
AMENDED
COMPLAINT**



**JURY TRIAL
DEMAND**

        Plaintiffs, KEVIN JAMEL WALSTON, ANGELICA VALENTIN, R.W., A MINOR,

and P.N., A MINOR, by their Attorney, the LAW OFFICE OF ANDREW C. LAUFER, LLC,

complaining of the Defendants, respectfully alleges, upon information and belief, as follows:

                            **NATURE OF ACTION**

1.      This is a civil action, pursuant to 42 U.S.C. § 1983 and 1988, seeking monetary damages

for Plaintiffs, KEVIN JAMEL WALSTON, ANGELICA VALENTIN, R. W., a minor, and P.

N., a minor (Plaintiffs), due to their wrongful arrest, detention, malicious prosecution and

injuries sustained during their imprisonment caused by the pervasive misconduct of THE CITY

OF NEW YORK (CITY), the NEW YORK CITY POLICE DEPARTMENT (NYPD), POLICE

OFFICER DAVID GRIECO (GRIECO), SHIELD #18061 OF THE 75TH PRECINCT, POLICE

OFFICER EDGARDO CARRIERI (CARRIERI), SHIELD #18255 OF THE 75TH PRECINCT,

POLICE OFFICER JOSEPH PATTON (PATTON), SHIELD #895832 OF THE 75TH PRECINCT, POLICE OFFICER LISA MILES (MILES), SHIELD #953108 OF THE 75TH PRECINCT, POLICE OFFICER MICHAEL GESSNER (GESSNER), SHIELD #940186 OF THE 75TH PRECINCT and JOHN AND JANE DOE ARRESTING OFFICERS OF THE 75th PRECINCT.

2.     Plaintiffs seeks declaratory relief pursuant to 28 U.S.C. §2201, compensatory and punitive damages for violation of their civil rights actionable pursuant to 42 U.S.C. §§1981, 1983, 1985 and 1986 and an award of costs, disbursements and attorney's fees under 42 U.S.C. §1988.

3.     This lawsuit seeks to hold the Defendant CITY OF NEW YORK liable for the above misconduct under the Federal Civil Rights statute, 42 U.S.C. § 1983 and *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). The unlawful actions of police officers, detectives and police personnel documented in this lawsuit resulted from affirmative or *defacto* municipal policies, practices and customs to violate the constitutional rights of criminal suspects, or from deliberate indifference by policy-making officials, acting on behalf of CITY OF NEW YORK, to such violations.

4.     The wrongful acts of the Defendants were willful, oppressive, intentional and malicious; therefore, punitive damages should be assessed against Defendants in an amount deemed sufficient to punish and deter Defendants and others in similar positions of authority from engaging in similar conduct in the future.

## JURISDICTION AND VENUE

5.     This case arises under 42 U.S.C. §1983, the Fourth, Fifth, Eighth and Fourteenth

Amendments to the United States Constitution, and under the common law of the State of New York.

6.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343.

7.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, events, injuries and related facts upon which the present action are based, occurred in the County of Kings, City and State of New York.

8.      The Plaintiffs are citizens of the State of New York.

## THE PARTIES

9.      Plaintiffs, KEVIN JAMEL WALSTON, ANGELICA VALENTIN, R. W., a minor, and P. N., a minor, are citizens and residents of the State of New York. At the time of the incidents alleged herein, Plaintiffs were citizens and residents of the State of New York and of the United States, and resided within the Eastern District of New York.

10.     Defendant THE CITY OF NEW YORK (CITY) is a municipal corporation of the State of New York and is a resident of the Eastern District of New York.

11.     The NEW YORK CITY POLICE DEPARTMENT (NYPD) is an agency of THE CITY OF NEW YORK. Detectives and police officers employed by the NYPD are agents and employees of the CITY OF NEW YORK, which is legally responsible for torts they commit within the scope of their employment and/or under color of law.

12.     Defendants, POLICE OFFICER DAVID GRIECO, SHIELD #18061 OF THE 75TH PRECINCT, POLICE OFFICER EDGARDO CARRIERI, SHIELD #18255 OF THE 75TH PRECINCT, POLICE OFFICER JOSEPH PATTON, SHIELD #895832 OF THE 75TH PRECINCT, POLICE OFFICER LISA MILES, SHIELD #953108 OF THE 75TH PRECINCT,

3

POLICE OFFICER MICHAEL GESSNER, SHIELD #940186 OF THE 75TH PRECINCT and JOHN AND JANE DOE, ARRESTING OFFICERS OF THE 75th PRECINCT, at all relevant times, were police officers in the NEW YORK CITY POLICE DEPARTMENT and employed by THE CITY OF NEW YORK, acted toward Plaintiffs under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of their employment. They are sued in their individual and their official capacity.

13.     Defendant, POLICE OFFICER DAVID GRIECO, SHIELD #18061 OF THE 75th PRECINCT, at all relevant times, was a police officer in the NEW YORK CITY POLICE DEPARTMENT and employed by THE CITY OF NEW YORK, acted toward Plaintiffs under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of his employment. He is sued in his individual and his official capacity.

14.     POLICE OFFICER EDGARDO CARRIERI, SHIELD #18255 OF THE 75TH PRECINCT, at all relevant times, was a police officer in the NEW YORK CITY POLICE DEPARTMENT and employed by THE CITY OF NEW YORK, acted toward Plaintiffs under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of his employment. He is sued in his individual and his official capacity.

15.     POLICE OFFICER JOSEPH PATTON, SHIELD #895832 OF THE 75TH PRECINCT, at all relevant times, was a police officer in the NEW YORK CITY POLICE DEPARTMENT and employed by THE CITY OF NEW YORK, acted toward Plaintiffs under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted

4

within the scope of his employment. He is sued in his individual and his official capacity.

16.     POLICE OFFICER LISA MILES, SHIELD #953108 OF THE 75TH PRECINCT, at all relevant times, was a police officer in the NEW YORK CITY POLICE DEPARTMENT and employed by THE CITY OF NEW YORK, acted toward Plaintiffs under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of her employment. She is sued in her individual and her official capacity.

17.     POLICE OFFICER MICHAEL GESSNER, SHIELD #940186 OF THE 75TH PRECINCT, at all relevant times, was a police officer in the NEW YORK CITY POLICE DEPARTMENT and employed by THE CITY OF NEW YORK, acted toward Plaintiffs under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of his employment. He is sued in his individual and his official capacity.

18.     At all times relevant hereto, Defendants, THE CITY OF NEW YORK and the NEW YORK CITY POLICE DEPARTMENT employed the individual Defendants, POLICE OFFICER DAVID GRIECO, SHIELD #18061 OF THE 75TH PRECINCT, POLICE OFFICER EDGARDO CARRIERI, SHIELD #18255 OF THE 75TH PRECINCT, POLICE OFFICER JOSEPH PATTON, SHIELD #895832 OF THE 75TH PRECINCT, POLICE OFFICER LISA MILES, SHIELD #953108 OF THE 75TH PRECINCT, POLICE OFFICER MICHAEL GESSNER, SHIELD #940186 OF THE 75TH PRECINCT and JOHN AND JANE DOE, ARRESTING OFFICERS OF THE 75th PRECINCT, who were present and involved in the unlawful use of force, arrests and imprisonment of the Plaintiffs on April 10, 2013, May, 25, 2013, July 9, 2013 and December 28, 2013.

19.     The individual Defendants were at all times mentioned herein, duly appointed, qualified and acting officers of the NEW YORK CITY POLICE DEPARTMENT, acting within the course and scope of such employment with the CITY OF NEW YORK, and under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and the City of New York.

20.     At all times relevant, the individual municipal Defendants, POLICE OFFICER DAVID GRIECO, SHIELD #18061 OF THE 75th PRECINCT, POLICE OFFICER EDGARDO CARRIERI, SHIELD #18255 OF THE 75TH PRECINCT, POLICE OFFICER JOSEPH PATTON, SHIELD #895832 OF THE 75TH PRECINCT, POLICE OFFICER LISA MILES, SHIELD #953108 OF THE 75TH PRECINCT, POLICE OFFICER MICHAEL GESSNER, SHIELD #940186 OF THE 75TH PRECINCT and JOHN AND JANE DOE, ARRESTING OFFICERS OF THE 75th PRECINCT, were acting as employees of THE CITY OF NEW YORK and the NEW YORK CITY POLICE DEPARTMENT. Notwithstanding their unconstitutional and unlawful conduct, the actions of the individual Defendants were taken in the course of their duties and were incidental to their otherwise lawful function as agents, servants and employees of THE CITY OF NEW YORK and the NEW YORK CITY POLICE DEPARTMENT.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

21.     Defendants CITY and NYPD, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiffs and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practices of, among other things;

a.  Selecting, retaining and assigning NYPD personnel, civilian personnel and civilian volunteers who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees and arrestees;

b. Failing to adequately train, supervise, and control personnel, civilian employees or volunteers in the arts of law enforcement;

c. Failing to adequately discipline personnel or civilian employees involved in misconduct; and

d. Condoning and encouraging personnel and civilian employees in the belief that they can violate the rights of persons such as the Plaintiffs in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

22.    Plaintiffs are informed and believe, and on the basis of such information and belief alleges, that Defendants CITY and NYPD ordered, authorized, acquiesced in, tolerated, or permitted officer Defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth.  Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by Defendants or on Defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiffs.

A. THE APRIL 2013 ARREST OF PLAINTIFF WALSTON

23.    On April 10, 2013, in the early afternoon, Plaintiff WALSTON was lawfully outside his place of residence located at 1029 Belmont Avenue in Brooklyn, New York.

24.    While standing near the neighboring building, 1027 Belmont Avenue, police officers

7

approached Plaintiff WALSTON.

25.    The officers claimed they had received a complaint which accused Plaintiff WALSTON of permitting a dog to attack someone a few months prior.

26.    Plaintiff WALSTON did not own a dog and a dog did not live in Plaintiff's apartment.

27.    The officers did not show Plaintiff WALSTON a copy of the Complaint and did not have a warrant for his arrest. Plaintiff informed officers that he had not been involved in any incidents involving dog attacks.

28.    Plaintiff was handcuffed and transported to the 75th Precinct.

29.    The removal was performed by POLICE OFFICER JOSEPH PATTON and JOHN and JANE DOE, ARRESTING OFFICERS OF THE 75TH PRECINCT, with the knowledge and authority of supervisors at THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT.

30.    The decision to remove Plaintiff WALSTON from outside his apartment building was made by the Defendants, acting jointly and individually.

31.    The removal was performed without first getting a warrant.

32.    The removal was performed without a legal justification, authority or right.

33.    At no time did Plaintiff WALSTON assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the public or officers present so as to warrant the unlawful seizure.

34.    Plaintiff WALSTON was arrested for violations of New York Penal Article §§ 120.10, 120.05, 201.25, 120.00, 120.14, 120.20, 130.52, 145.00, 265.01, 120.15 and 240.26, commonly known as assault and menacing in various degrees, forcible touching, criminal mischief, criminal

possession of a weapon in the fourth degree and harassment.

35.     At approximately 2:30 am on April 12, 2013, Plaintiff WALSTON was taken to Central Booking where he remained for approximately 24 hours.

36.     Early on April 12, 2013, Plaintiff WALSTON saw a Judge and was remanded to Rikers Island where he remained for approximately five days.

37.     On or about April 17, 2013, Plaintiff was scheduled to go before the Grand Jury when he was informed that there were no witnesses to testify against him and his case would be dismissed.

38.     Plaintiff WALSTON's case was dismissed on October 25, 2013.

39.     As a result of the foregoing, Plaintiff was deprived of his rights, privileges and immunities secured by the Constitution of the United States of America and of the State of New York, and his rights pursuant to 42 U.S.C §1983.

B. THE MAY 2013 ARREST OF PLAINTIFF WALSTON

40.     On May 25, 2013, at approximately 1:35 am, Plaintiff was lawfully outside his place of residence located at 1029 Belmont Avenue in Brooklyn, New York.

41.     POLICE OFFICER DAVID GRIECO and JOHN AND JANE DOE, ARRESTING OFFICERS OF THE 75TH PRECINCT, approached Plaintiff WALSTON as he was waiting for a cab and asked him what was going on.

42.     The officers then entered the building and exited shortly thereafter holding a bag that was allegedly recovered from the basement of the building. There are four units in the building where Plaintiff resided.

43.     The officers arrested Plaintiff WALSTON without explanation.

44.     Plaintiff WALSTON inquired about why he was being arrested and pleaded with the officers to give him an explanation. Plaintiff was told that if he kept asking, that the officers would go to Plaintiff's apartment and file an ACS charge for his daughter.

45.     Plaintiff WALSTON was transported to the 75th Precinct by Defendants, including POLICE OFFICER DAVID GRIECO.

46.     The removal was performed by the officer Defendants with the knowledge and authority of supervisors at THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT.

47.     The decision to remove Plaintiff WALSTON from outside his apartment building was made by the Defendants, acting jointly and individually.

48.     The removal was performed without a legal justification, authority or right.

49.     The removal was performed without first getting a warrant.

50.     At no time did Plaintiff WALSTON assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the public or officers present so as to warrant the unlawful seizure.

51.     Plaintiff WALSTON was arrested for violations of New York Penal Article §§ 265.02, 265.01-B and 265.01, commonly known as criminal possession of a weapon in the third degree, criminal possession of a firearm and criminal possession of a weapon in the fourth degree.

52.     There was no weapon found on Plaintiff WALSTON's person at the time of his arrest.

53.     At approximately 12:30 pm on May 25, 2013, Plaintiff WALSTON was chained to seven or eight detainees heading to Central Booking.

54.     While attempting to get into the transport van, one of the detainees in front of Plaintiff

WALSTON tripped or fell, causing Plaintiff WALSTON to be violently precipitated to the ground.

55.     Plaintiff WALSTON was taken to SUNY Downstate Medical Center for treatment of his sprained knee, leg and back. Plaintiff was diagnosed with lower back sprain and an injury to his posterior cruciate ligament. Plaintiff was given a knee immobilizer upon his discharge from the hospital.

56.     Plaintiff WALSTON was escorted by police to Central Booking where he remained for approximately twenty three hours before seeing a Judge on May 26, 2013.

57.     Plaintiff WALSTON remained in custody at Rikers Island until May 31, 2013 when his case was dismissed.

58.     As a result of the foregoing, Plaintiff was deprived of his rights, privileges and immunities secured by the Constitution of the United States of America and of the State of New York, and his rights pursuant to 42 U.S.C §1983.

C. THE JULY 2013 ARREST OF PLAINTIFF WALSTON and THE ARREST OF PLAINTIFFS ANGELICA VALENTIN and minors R. W. and P. N.

59.     On July 9, 2013, at approximately 8:00 am, Plaintiffs were lawfully inside their place of residence located at 1029 Belmont Avenue in Brooklyn, New York.

60.     Police officers cut a hole in the apartment door and broke through the exterior windows. A robotic camera was thrown into the apartment to see if anyone was inside.

61.     Officers forced their way into the apartment through the doorway and windows, claiming they were looking for Plaintiff WALSTON, as they believed he had been involved in the shooting of a police officer.

62.     Large guns were swinging around the apartment, at Plaintiffs VALENTIN, R. W. and P.

N. while the officers destroyed Plaintiffs' personal property.

63.     Plaintiff WALSTON informed the officers that he was elsewhere at the time of the alleged police shooting. He was scared for his life and for the life of his family. Upon information and belief, the officers verified Plaintiff WALSTON was not present at the time of the shooting.

64.     Plaintiffs VALENTIN, R. W. and P. N. were escorted to a patrol car and transported to the 75th Precinct.

65.     Plaintiff WALSTON was handcuffed and transported to the 75th Precinct where Plaintiffs WALSTON and VALENTIN remained for approximately twenty four hours.

66.     Infant Plaintiffs R. W. and P. N. were held for approximately five hours in a holding cell before being released to an adult family member.

67.     The decision to remove Plaintiffs from their apartment was made by the Defendants, acting jointly and individually.

68.     The removal was performed by the officer Defendants, including POLICE OFFICER EDGARDO CARRIERI, with the knowledge and authority of supervisors at THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT.

69.     The removal was performed without a legal justification, authority or right.

70.     The removal was performed without first getting a warrant.

71.     At no time did Plaintiffs assault or attempt to assault any officer, nor did they present a threat or perceived threat to the personal safety of any officer or to the security of the public or officers present so as to warrant the unlawful seizure.

72.     Plaintiffs WALSTON and VALENTIN were arrested for violations of New York Penal

12

Article §§ 140.15, 140.10(A) and 140.05, commonly known as criminal TRESPASS in the second degree, criminal trespass in the third degree and trespass.

73.    Plaintiffs were lawfully in their place of residence at the time of their arrest.

74.    Plaintiff WALSTON remained in custody at the 75th Precinct for approximately seventy-two hours (72) before he was transported to Central Booking.

75.    On July 12, 2013, at approximately 1:30 am, Plaintiff WALSTON saw a Judge and was released on his own recognizance.

76.    Plaintiff WALSTON has appeared in Criminal Court more than a dozen times on this case. Plaintiff WALSTON's case was finally dismissed on October 25, 2015.

77.    Plaintiff VALENTIN remained in a holding cell at the 75th Precinct with her children for approximately four hours. When the children were released to an adult family member, she was moved to an interrogation room for questioning.

78.    Plaintiff VALENTIN was then placed under arrest and remained in custody at the 75th Precinct for approximately seventy-two (72) hours in total.

79.    Plaintiff VALENTIN was transported to Central Booking where she remained until approximately 1:30 am on July 12, 2013, when he was released on her own recognizance

80.    Plaintiff VALENTIN returned to court six or seven times and provided the Court with proof of residence for herself, her children and Plaintiff WALSTON.

81.    Plaintiff VALENTIN's case was dismissed on March 20, 2014.

82.    While Plaintiffs were in custody, their family dog was shot, allegedly by police, and their personal property and belongings were destroyed and removed from their apartment.

83.    As a result of the foregoing, Plaintiffs were deprived of their rights, privileges and

immunities secured by the Constitution of the United States of America and of the State of New York, and their rights pursuant to 42 U.S.C §1983.

D. THE DECEMBER 2013 ARREST OF PLAINTIFF WALSTON

84.     On December 28, 2013, at approximately 2:00 am, Plaintiff WALSTON was returning home from picking up Plaintiff VALENTIN from work after an altercation with a patron outside the establishment where she worked.

85.     When Plaintiffs reached the outside of their place of residence, 1029 Belmont Avenue in Brooklyn, New York, approximately ten or twelve police officers were waiting for them.

86.     Upon stopping the vehicle, the officers approached their vehicle and ordered Plaintiffs to get out of the car.

87.     Upon information and belief, one of the co-workers of Plaintiff VALENTIN called the police to report an incident outside her place of employment and there was a misunderstanding as to who was involved in the altercation. It was reported that the altercation involved Plaintiff WALSTON, however Plaintiff VALENTIN informed police that this was not true.

88.     The officers ordered Plaintiff VALENTIN out of the car and she complied. Plaintiff WALSTON denied any involvement in the altercation with VALENTIN before the officers forcibly removed Plaintiff WALSTON from the vehicle and pushed him against the car.

89.     Plaintiff WALSTON was cuffed behind his back and pushed into a patrol car. Plaintiff was escorted to the 75th Precinct where he remained for approximately fifteen hours.

90.     The removal was performed by the officer Defendants, including POLICE OFFICER LISA MILES, and with the knowledge and authority of supervisors at THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT.

14

91.     The decision to remove Plaintiff WALSTON from outside his apartment building was made by the Defendants, acting jointly and individually.

92.     The removal was performed without a legal justification, authority or right.

93.     The removal was performed without first getting a warrant.

94.     At no time did Plaintiff WALSTON assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the public or officers present so as to warrant the unlawful seizure.

95.     Plaintiff WALSTON was arrested for violations of New York Penal Article §§ 120.00, 240.26, 240.30, 110-120.00 and 120.15, commonly known as assault in the third degree, harassment in the second degree, aggravated harassment in the second degree, attempt to commit a crime and menacing in the third degree.

96.     At approximately 5:00 pm on December 28, 2013, Plaintiff WALSTON was transported to Central Booking.

97.     On December 29, 2015, Plaintiff WALSTON saw a Judge and was remanded to Rikers Island where he was detained for approximately five days.

98.     Plaintiff WALSTON was released on January 3, 2014.

99.     In April 2015, Plaintiff WALSTON returned to the Criminal Court, Kings County to obtain a copy of his Disposition relating to the December 28, 2013 arrest. Plaintiff was informed that there were open warrants in his name and he could not do so. He returned to Court in July 2015 and discovered that his case had been dismissed.

100.    Plaintiff WALSTON's case was dismissed on June 10, 2015.

101.    As a result of the foregoing, Plaintiff was deprived of his rights, privileges and

15

immunities secured by the Constitution of the United States of America and of the State of New York, and his rights pursuant to 42 U.S.C §1983.

E. THE SECOND DECEMBER 2013 ARREST OF PLAINTIFF WALSTON

102.     On December 28, 2013, at approximately 2:00 am, Plaintiff WALSTON was transported to the 75th Precinct resulting from an alleged altercation with Plaintiff VALENTIN.

103.     Upon his arrival at the Precinct, Plaintiff WALSTON was informed that he was also being arrested for an incident that occurred on December 13, 2013 at a store located at 567 Euclid Avenue in Brooklyn, New York.

104.     The officers did not show Plaintiff WALSTON a copy of a complaint and did not have a warrant for his arrest.

105.     Plaintiff WALSTON was arrested for violations of New York Penal Article §§ 120.14, 265.01, 120.15 and 240.26, commonly known as menacing in the second and third degrees, criminal possession of a weapon in the fourth degree and harassment in the second degree.

106.     Plaintiff denied being involved in the incident and urged the officers, including POLICE OFFICER MICHAEL GESSNER, to review the surveillance video footage from the store to confirm that he was not present.

107.     At approximately 5:00 pm on December 28, 2013, Plaintiff WALSTON was transported to Central Booking.

108.     On December 29, 2015, Plaintiff WALSTON saw a Judge and was remanded to Rikers Island where he was detained for approximately five days.

109.     Plaintiff WALSTON was released and this case was dismissed on January 3, 2014.

110.     As a result of the foregoing, Plaintiff was deprived of his rights, privileges and

16

immunities secured by the Constitution of the United States of America and of the State of New York, and his rights pursuant to 42 U.S.C §1983.

## FIRST CAUSE OF ACTION

111.   Plaintiffs repeat and reallege each and every allegation contained above as though set forth at length herein.

112.   That on or about April 10, 2013, May, 25, 2013, July 9, 2013 and December 28, 2013, the Defendants, their agents, servants and employees, including but not limited to OFFICER Defendants herein, wrongfully and falsely arrested, imprisoned and detained Plaintiffs without any right or justifiable grounds therefore.

113.   That the aforesaid arrest, detention and imprisonment continued at various locations.

114.   That the arrest, detention and imprisonment was caused by the Defendants, their agents, servants and employees, including but not limited to the individual Defendants herein, without a warrant and without any reasonable cause or belief that Plaintiffs were in fact guilty of any crime.

115.   That the CITY, its agents, servants and employees, as set forth above, intended to confine Plaintiffs; that Plaintiffs were conscious of the confinement; that Plaintiffs did not consent to the confinement; and that the confinement was not otherwise privileged.

116.   Notwithstanding the above, the unlawful arrest and prosecution of Plaintiffs continued by Defendants despite the lack of facts, lack of investigation, and lack probable or reasonable cause to support the charges.

117.   Defendants GRIECO, CARRIERI, PATTON, MILES, GESSNER and officers of the 75TH Precinct, violated Plaintiffs' rights under the Fourth Amendment of the United States

Constitution when they arrested and imprisoned the Plaintiffs without probable cause, arguable probable cause or other legal justification.

118.    That by reason of the false arrest, imprisonment and detention of Plaintiffs, Plaintiffs were subjected to great indignities, humiliation and ridicule in being so detained, and was caused to suffer much pain in both mind and body, and to sustain economic loss, and were otherwise damaged.

## SECOND CAUSE OF ACTION

119.    Plaintiffs repeat and reallege each and every allegation contained above as though set forth at length herein.

120.    By virtue of the foregoing, the Officer Defendants, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued and/or caused the initiation or continuation of, criminal proceedings against Plaintiffs.

121.    That following their arrest, Plaintiffs were wrongfully, falsely and maliciously charged by Defendants and prosecuted for crimes of which they were innocent.

122.    The criminal proceedings terminated in Plaintiffs' favor.

123.    There was no probable cause for the commencement or the continuation of the criminal proceedings.

124.    Defendants, with actual malice, initiated and continued, or caused the initiation and continuation of, criminal proceedings against Plaintiffs for which they knew, or should have known, there was no probable cause, and for which in fact there was no probable cause, and thereby caused Plaintiffs to be deprived of their liberty. Such proceedings ultimately were terminated in Plaintiffs' favor.

18

125.    Defendants committed the foregoing violations of Plaintiffs' rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to Plaintiffs' constitutional rights or to the effect of such misconduct upon Plaintiffs' constitutional rights.

126.    That as a result of the aforesaid malicious prosecution, Plaintiffs were subjected to great indignities, humiliation and ridicule, was greatly injured in his credit and circumstances, and was caused to suffer much pain in both mind and body, and was otherwise damaged.

127.    By reason of the foregoing, the Defendants are liable to Plaintiffs, pursuant to 42 U.S.C. §1983, for compensatory and for punitive damages.

128.    Defendant CITY OF NEW YORK is liable under the principal of respondeat superior.

### THIRD CAUSE OF ACTION

129.    Plaintiffs repeat and reallege each and every allegation contained above as though set forth at length herein.

130.    Plaintiffs were deprived of their rights, privileges and immunities secured by the Constitution of the United States of America and of the State of New York, and their rights pursuant to 42 U.S.C. § 1983 by those who, under color of a statute of regulation of a state, caused Plaintiffs to be so deprived;

131.    That the aforesaid actions by Defendants GRIECO, CARRIERI, PATTON, MILES and GESSNER were done pursuant to an official municipal policy or a custom of THE CITY OF NEW YORK, which policy involved indiscriminate detention, interrogation, intimidation and prosecution of individuals were engaged in criminal conduct, and for the purpose of thwarting the fair administration of justice.

132.    That Defendants herein, their agents, servants and employees, motivated in part by racial

19

and/or ethnic animus, conspired to deprive Plaintiffs of their federal civil rights and constitutional rights, in violation of 42 U.S.C. § 1985.

133. Prior to Plaintiffs' arrest, policymaking officials at the NYPD, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and Defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning the determination of probable cause to make an arrest.

134. The foregoing violations of Plaintiffs' Federal Constitutional rights and injuries were further directly, foreseeably, proximately and substantially caused by conduct, chargeable to Defendant CITY, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiffs, who are investigated, arrested, or prosecuted for alleged criminal activities.

135. The aforesaid deliberate or *defacto* policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendant CITY, including but not limited to, the NYPD Police Commissioner, who knew (or should have known):

    a. to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

    b. that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for

further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

c.      that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or Defendants and cause them constitutional injury.

136.   Under the principles of municipal liability for federal civil rights violations, the CITY and NYPD, have the final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements governing arrest, interrogation of witnesses and the initiation of criminal prosecutions.

137.   The aforesaid policies, procedures, regulations, practices and/or customs of Defendants CITY and the NYPD were collectively and individually a substantial factor in bringing about the aforesaid violations by the Individual Defendants of Plaintiffs' rights under the Constitution and Laws of the United States.

138.   Upon information and belief, the CITY was deliberately indifferent to the Plaintiffs' constitutional rights by failing to train and supervise the individual Defendants in the proper and lawful performance of their duties.

139.   Plaintiffs were deprived of their rights, privileges and immunities secured by the Constitution of the United States of America and of the State of New York, and their rights pursuant to 42 U.S.C. § 1983 by those who, under color of a statute of regulation of a state, caused Plaintiffs to be so deprived.

21

140.    By virtue of the foregoing, Defendant CITY is liable for having substantially caused the foregoing violations of Plaintiffs' constitutional rights and their constitutional injuries.

141.    As a result of the CITY's culpable conduct in connection with the Defendants' unconstitutional conduct alleged herein, the Plaintiffs have suffered loss of liberty, mental anguish, emotional distress, insult, embarrassment, humiliation, and other compensable injuries, for which they are entitled to an award of compensatory damages.

**DAMAGES DEMAND**

Notwithstanding the above, the unlawful arrest and prosecution of Plaintiffs continued by Defendants despite the lack of facts, lack of investigation, and lack probable or reasonable cause to support the charges.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

1.    General and compensatory damages in an amount according to proof;

2.    Special damages in an amount according to proof;

3.    Statutory damages;

4.    Exemplary and punitive damages against each individual Defendant, not against the public entities, according to proof;

5.    Costs of suit, including attorneys' fees; and,

6.    Such other relief as may be warranted or as is just and proper.

Dated: New York, New York
        January 18, 2016

ANDREW C. LAUFER
Attorney for Plaintiffs
Law Office of Andrew C. Laufer, PLLC
255 West 36th Street, Suite 1104
New York, New York 10018
(212)422-1020(Phone)
(212)422-1069(Fax)

To:

THE CITY OF NEW YORK
100 Church Street
New York, New York 10007

THE NEW YORK CITY POLICE DEPARTMENT
100 Church Street
New York, New York 10007

POLICE OFFICER DAVID GRIECO, SHIELD #18061
75th Precinct
1000 Sutter Avenue
Brooklyn, New York 11208-3553

POLICE OFFICER EDGARDO CARRIERI, SHIELD #18255
75th Precinct
1000 Sutter Avenue
Brooklyn, New York 11208-3553

POLICE OFFICER JOSEPH PATTON, SHIELD #895832
75th Precinct
1000 Sutter Avenue
Brooklyn, New York 11208-3553

POLICE OFFICER LISA MILES, SHIELD #953108
75th Precinct
1000 Sutter Avenue
Brooklyn, New York 11208-3553

POLICE OFFICER MICHAEL GESSNER, SHIELD #940186
75th Precinct
1000 Sutter Avenue
Brooklyn, New York 11208-3553

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Civil Action#: 15cv04480

KEVIN JAMEL WALSTON, ANGELICA VALENTIN,
R.W., a minor and P.N., a minor,

Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER
DAVID GRIECO, SHIELD #18061 OF THE 75th PRECINCT, POLICE OFFICER EDGARDO
CARRIERI, SHIELD #18225 OF THE 75th PRECINCT, POLICE OFFICER JOSEPH PATTON,
SHIELD #895832 OF THE 75th PRECINCT, POLICE OFFICER LISA MILES, SHIELD #953108
OF THE 75th PRECINCT, POLICE OFFICER MICHAEL GESSNER, SHIELD #940186 OF THE
75th PRECINCT and JOHN AND JAN DOE ARRESTING OFFICERS OF THE 75th PRECINCT

Defendants,

## SECOND AMENDED COMPLAINT
## JURY TRIAL DEMANDED

### LAW OFFICE OF ANDREW C. LAUFER

**Attorney(s) for Plaintiff**

Office and Post Office Address
255 W. 36th Street, Suite 1104
New York, NY 10018

Tel: (212) 422 1020
Fax: (212) 422 1069

To:

Signature (Rule 130-1.1-a)

Print name beneath

Service of a copy of the within is hereby admitted.

Dated:

Attorney(s) for:

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT
that an order of which the within is a true copy
will be presented for settlement to the HON one of the judges of the
within named Court at
on            at            M.
Dated,

Yours, etc.

Law Office of Andrew C. Laufer