UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

KEVIN JAMEL WALSTON, ET AL.,                          No. 1:15-cv-4480-PKC-RLM

                    Plaintiff,

        -against-                                     **PLAINTIFFS' RESPONSE TO**
                                                      **DEFENDANTS' STATEMENT OF**
THE CITY OF NEW YORK, ET AL.,                         **UNDISPUTED FACTS PURSUANT TO**
                                                      **LOCAL CIVIL RULE 56.1**
                    Defendants.

----------------------------------------------------------x

        Defendants The City of New York, David Grieco, Edgardo Carrieri, Joseph

Patton, Lisa Miles and Michael Gessner respectfully submit, for purposes of this motion only,

this statement, pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts

for the Southern and Eastern Districts of New York, setting forth the material facts to which they

contend there are no genuine issues to be tried:

        1.      1029 Belmont Ave. in Brooklyn is a two-story building containing four

rental apartments.  It is connected to another two-story building known municipally as 1027

Belmont Ave.  Ex. 1 (Grieco Dep.) at 31:13-32:20; Ex. 2 (Carrieri Dep.) at 44:11-18; Ex. 3

(Valentin Dep.) at 27:14-21, Ex. 4 (Walston Dep.) at 16:10-17:5, 124:3-4; Ex. 21 (Complaint

Room Screening Report).

        Admit.

        2.      After entering the front door of 1029 Belmont Ave., there are doors on the

right and left to enter the two apartments on that floor, and a third door that leads to the basement

under the stairs.  Ex. 1 (Grieco Dep.), 39:25-40:18; Ex. 3 (Valentin Dep.) at 27:17-21, Ex. 4

(Walston Dep.) at 17:6-10, 86:22-87:8.

        Admit.

3.      The basement is a big open area with an old bar setup, a back boiler room and door at the back leading to the common backyard. Ex. 1 (Grieco Dep.), 41:7-15, 42:11-43:8, Ex. 3 (Valentin Dep.) at 51:20-23.

Admit.

April 10, 2013 Arrest

4.      On December 1, 2012, non-party police officer Dillan Krasteff responded to a radio report of an assault at 1033 Belmont Avenue in Brooklyn. Krastff Aff. at ¶¶ 4, 7; Ex. 5 (Sprint Report December 1, 2012).

Cannot admit or deny since the plaintiffs' were not present and did not witness this alleged event.

5.      When Officer Krasteff arrived at the scene, he was flagged down by Robert Davilla, who told Officer Krasteff, he had found a woman, bleeding and in apparent shock, in his home. According to Mr. Davilla, the woman had crawled into the home through a window to seek help. Krastff Aff. at ¶¶ 4, 7; Ex. 9 (Krasteff Memo Book).

Contains Hearsay statements.  Cannot admit or deny since the plaintiffs' were not present and did not witness this alleged event.

6.      Officer Krasteff entered Mr. Davilla's home and met with the victim, V.N. Krastff Aff. at ¶ 8.

Cannot admit or deny since the plaintiffs' were not present and did not witness this alleged event.

7.      V.N. told Officer Krasteff that she had been walking down the street on her way to get cigarettes at the corner store when she saw a man she knew, Mellow, who said to her "you got Reggie locked up". According to the V.N., Mellow then pulled her into one of the

- 2 -

upstairs apartment of 1029 Belmont, where he proceeded to beat her and try to rape her. According to V.N., he then unleashed two dogs on her, who savagely bit her. She escaped the apartment by fleeing onto a balcony, from which she jumped into the rear yard. Krasteff Aff. at ¶ 10; Ex. 7 (Complaint Report); Ex. 9 (Krasteff Memo Book); Ex. 6 (Patton Dep.) at 52:11-54:3.

> Cannot admit or deny since the plaintiffs' were not present and did not witness this alleged event.

8.     Officer Krasteff observed that the victim's injuries were consistent with her claim. She had visible dog bites all over her body, lacerations to her legs and arms, a swollen face, and a cut around her eyes. Her clothing had blood on it, as did her face. Krasteff Aff. at ¶ 9; Ex. 9 (Krasteff Memo Book).

> Cannot admit or deny since the plaintiffs' were not present and did not witness this alleged event.

9.     Further, Officer Krasteff had seen dogs at 1029 Belmont in the past. Krasteff Aff. at ¶ 11.

> Cannot admit or deny since the plaintiffs' were not present and did not witness this alleged event.  Admit to the degree that Plaintiff testified he owned Shih-Tzu's and Yorkies but testified he never owned a Pitbull.  (See Plaintiff's Exhibit B pg. 76 line 8 through line 11.)

10.     Officer Krasteff recorded the information provided to him by V.N. in complaint report number 2012-075-19514, and also radioed a description of "Mellow" over the police radio. Ex. 7 (Complaint Report); Ex. 6 (Patton Dep.) at 53:4-7; Krasteff Aff. at ¶ 13.

> Cannot admit or deny since the plaintiffs' were not present and did not witness this alleged event.

11.     V.N. was taken to Brookdale hospital where she received over 50 stiches to her arms, legs, neck and face, and was diagnosed with a broken ankle. V.N. remained in the hospital for three weeks. Krasteff Aff. at ¶ 12; Ex. 10 (Arrest Report); Ex. 8 (Aided Report).

Cannot admit or deny since the plaintiffs' were not present and did not witness this alleged event.

12.     Detective Joseph Patton, who picked up the case, relied on the complaint report as part of his investigation. Ex. 6 (Patton Dep.) at 53:24-54:3.

Admit as it being his testimony. However, the truth and veracity of such testimony is left to the trier of fact.

13.     On December 10, 2012, Det. Patton spoke to the victim at Brookdale Hosp. The victim reported to him in substance that: the subject who lives on the second floor of 1029 Belmont whom she knows as "mellow yellow" approached her and tried to get her to hang out with him. When she declined, he grabbed her by her top and dragged her into the building. While grabbing her, he exposed her breast and while trying to flee he tried to pull her clothes off. He then let his dogs loose and told them to "kill the bitch." She ran into an apartment and jumped out onto a patio and hid in an adjacent lot until the police arrived. She was taken to Brookdale hospital where she was admitted with a broken right ankle and bite marks to her neck, face, left arm, right arm, left leg and ankle. She received approximately 50 stitches. Ex. 10 (Arrest Report); Ex. 11 (DD-5 excerpt); Ex. 6 (Patton Dep.), 32:14-20, 33:15-24, 34:3-7, 35:2-4, 45:14-19.

Deny and Object.  Testimony contains inadmissible hearsay statements (ie. "The victim reported to him.....".)  Admit to the degree as it was Patton's testimony only.

14.     The victim identified Walston, a/k/a "Mellow Yellow" as her assailant. Ex. 6 (Patton Dep.) at 32:25-33:7, 35:10-19, 39:19-23, 77:24-78:4; Ex. 10 (Arrest Report); Ex. 12 (DD-5 excerpt).

> Admit as it was the testimony of Patton only. However, the victim did not swear a criminal complaint or affidavit. Therefore, any statements made to the defendants' in this context are inadmissible hearsay.

15.     On March 13, 2013, Walston was in the 75th precinct in connection with an arrest unrelated to this case. At that time, Detective Patton briefly spoke to him, and Walston confirmed his nickname was "Mellow". Ex. 6 (Patton Dep.) at 93:22-94:12; Ex. 12 (DD-5 excerpt).

> Deny. Walston did not admit this. See Plaintiffs' Exhibit B (Walston Dep.) at pg. 12 line 16 through pg. 13 line 17.

16.     Detective Patton went to Walston's various known addresses a number of times seeking him out for arrest, but he was not present on those occasions. Ex. 6 (Patton Dep.) at 36:13-37:16.

> Admit as it was the testimony of Patton only.

17.     Detective Patton did not arrest Walston on March 13, 2013 because the complainant was unavailable at that time, and Detective Patton ideally wanted her to be available to sign a supporting affidavit for the criminal complaint, though he knew that was not actually necessary. Ex. 6 (Patton Dep.) at 93:22-97:23; Ex. 12 (DD-5 excerpt).

> Partially admit. However, Patton contradicted himself during his testimony initially stating he needed the victim present at the time of arrest then changed it to not needing her. (See Plaintiffs' Exhibit A pg. 94 line 22 through 24.)

- 5 -

18.     On March 28, 2013, the victim identified Walston in a photograph, confirming he was her assailant. Ex. 6 (Patton Dep.) at 32:25-33:7, 35:10-19, 39:19-23, 77:24-78:4; Ex. 10 (Arrest Report); Ex. 12 (DD-5 excerpt); Ex. 14 (Complaint Room Screening sheet).

Admit only to the degree that this was the testimony of Patton.  However, the victim did not swear a criminal complaint or affidavit.  Therefore, any statements made to the defendants' are inadmissible hearsay.

19.     On March 29, 2013, an I-card was issued for Walston.  Ex. 13 (DD-5 excerpt); Ex. 6 (Patton Dep.) at 55:17-56:5.

Admit.

20.     On April 10, 2013, at about 1:00 P.M., the Brooklyn North Warrant Squad brought in Walston, and Det. Joseph Patton arrested him for assault in violation of Penal Law §§ 120.05(1) and 120.05(1X).  Ex. 10 (Arrest Report); Ex. 6 (Patton Dep.), 46:14-25, 47:13-15, 56:20-57:7.

Admit.

21.     Thereafter, Det. Patton spoke to District Attorney's office.  Ex. 14 (Complaint Room Screening Sheet); Ex. 6 (Patton Dep.), 40:16-19.

Admit as to it being Patton's testimony only.

22.     On April 10, 2013, Det. Patton signed the criminal court complaint.  Ex. 15 (People v. Walston, 2013KN027479); Ex. 6 (Patton Dep.) at 40:20-25.

Admit.

23.     On October 25, 2013, the criminal charges against Walston were dismissed under the speedy trial provisions.  Ex. 15 (People v. Walston, 2013KN027479).

Admit, over 6 months after the arrest, all charges were dismissed.

24.     They were dismissed because the prosecutor could not locate the victim.
Ex. 6 (Patton Dep.) at 44:10-15; 83:6-17.

> Admit as this was the testimony of Patton.  Object as it is inadmissible hearsay as
> to what the prosecutor's reasoning was dismissing the matter other than speedy
> trial provisions as depicted in Mr. Walston's certificate of disposition.

> May 25, 2013 Arrest

25.     On May 24, 2013, Det. Torepka received a telephone call from a tipster
advising that he had information regarding an illegal gun. Det. Torepka and Officer Grieco met
with the tipster, who told them that that Mellow had a gun in the basement at 1029 Belmont
Avenue. Det. Torepka knew from his experience in the 75th precinct that Mellow was Walston.
Ex. 1 (Grieco Dep.) at 21:19-22:18, 22:25-23:20, 25:24-26:25; 32:21-33:10, 37:6-9; Terepka
Aff. at ¶¶ 6-7.

> Admit as to what Greico testified to during his deposition and what's contained
> within the Terepka affidavit.  Deny as to Walston being Mellow. See Plaintiffs'
> Exhibit B (Walston Dep.) at pg. 12 line 16 through pg. 13 line 17.  Further, the
> building the Plaintiffs' resided in contained multiple tenants.     See Plaintiff's
> Exhibit B pg. 92 lines 11-17.)  Also see Defendants Ex. 1 (Grieco Dep.) at 31:13-
> 32:20; Ex. 2 (Carrieri Dep.) at 44:11-18; Ex. 3 (Valentin Dep.) at 27:14-21, Ex. 4
> (Walston Dep.) at 16:10-17:5, 124:3-4; Ex. 21 (Complaint Room Screening
> Report).

26.    Det. Torepka informed the other officers on their five man anti-crime team, of the information he received from the informant. Ex. 1 (Grieco Dep.), 21:19-22:18, 26:23-25, 28:9-19, 108:23-109:9; Terepka Aff. at ¶ 8.

Admit as to this being within the Terepka Affidavit.

27.    In the early morning hours of May 25, 2013, Det. Terepka received a call from one of the members of his team stating that he had seen Walston exit the basement at 1029 Belmont Avenue. Terepka Aff. at ¶ 9; Ex. 1 (Grieco Dep.) at 30:4-20, 39:7-18, 67:7-68:12, 109-10-110:7.

Admit as to this being within the Terepka Affidavit.  Object as to what Terepka was told by 'one of the members of his team' as inadmissible hearsay.

28.    When Detective Terpeka and Officer Grieco arrived at the scene, Officer Minardi told Officer Grieco that he had seen Walston exiting the building with his pitbull. Ex. 1 (Grieco Dep.) at 109:10-110:7.

Object as to it being inadmissible hearsay as to what Minardi told Greico. Further, Plaintiff denies ever owning a Pitbull.  (See Plaintiff's Exhibit B pg. 76 line 8 through line 11.)

29.    Officer Napolitano went into the basement and found an unloaded revolver in a sock on a ledge in the basement.  Officer Grieco may have also entered the basement. Ex. 1 (Grieco Dep.) at 38:3-13, 39:19-41:6, 44:10-17, 45:6-25, 110:15-111:13, 111:22-112:5; Ex. 16 (Complaint Report).

Deny.  Plaintiff testified that it was Greico and not Napolitano who entered the premises. See Plaintiff's Exhibit B pg. 89 line 25 through pg. 90 line 16 – Dep of Walston.)  Plaintiff also testified that Greico was the one who exited the premises

with a gun in a sock. (See Plaintiff's Exhibit B pg. 96 line 6 through line 18 Dep of Walston.) Further, Napolitano never testified nor submitted an affidavit in support of this motion.

30.      On May 25, 2013 at about 1:42 A.M., Officer David Grieco arrested plaintiff for criminal possession of a weapon in violation of Penal Law § 265.02(1). Ex. 17 (Arrest Report).

Admit.

31.      Officer Grieco vouchered the pistol that P.O. Napolitano recovered under voucher number 3000225012. Ex. 18 (Voucher); Ex. 1 (Grieco Dep.) at 47:23-48:3, 94:3-96:22.

Admit as to what is reflected in the paperwork. Deny as it was Greico and not Napolitano who recovered the weapon. (See Plaintiff's Exhibit B pg. 96 line 6 through line 18 Dep of Walston.)

32.      Officer Grieco spoke to the district attorney's office and advised them that the received information that Walston had a gun and that they observed him coming out of the basement where the gun was found. Ex. 1 (Grieco Dep.) at 63:23-64:5, 114:10-24.

Admit as to it being the testimony of Greico only.

33.      On May 25, 2013, Officer Grieco signed the criminal court complaint. Ex. 19 (People v. Walston, 2013KN040123); Ex. 1 (Grieco Dep.) at 66:2-4.

Admit.

34.      On May 31, 2013, the criminal charges against Walston were dismissed. Ex. 20 (People v. Walson 2013KN00123).

Admit.

July 9, 2013 Arrest

35.      Brooklyn North Homicide received an anonymous tip that the July 4, 2013 shooter of police officer Sarwar was inside 1029 Belmont Ave. in Brooklyn.  Ex. 21 (Complaint Room Screening Sheet); Ex. 2 (Carrieri Dep.) at 29:20-24.

> Admit as to it being contained within Carrieri's deposition transcript.  Cannot admit or deny that the defendants' received an 'anonymous tip.'

36.      The owner of the building gave the police written permission to search the building and also stated that no one was supposed to be living in the premises.  Ex. 22 (Complaint Report); Ex. 21 (Complaint Room Screening Sheet); Ex. 42 (owner affidavit); Ex. 2 (Carrieri Dep.) at 53:5-13; Ex. 27 (owner supporting deposition).

> Admit.  However, the affidavit was signed by the complaining witness on July 15, 2013 several days **after** the arrest.  (See Plaintiffs' Exhibit Q.)  Further, the defendants' did not arrive at the premises to evict its occupants but to investigate an 'anonymous tip'.  See #35 above.  Furthermore, Carrieri acknowledges that he did not have a warrant of eviction and he was aware this was necessary before evicting someone from their home.  (See Plaintiffs' Exhibit I pg. 53 line 5 through pg. 54 line 20, pg.. 57 line 15 through pg. 58 line 24 and pg. 62 line 16 to pg. 63 line 10).

37.      On July 9, 2013, ESU officers entered the building at 1029 Belmont Ave. Two vicious dogs on the second floor landing were tranquilized and removed.  After some time Walston, Valentin and their two children voluntarily surrendered from an apartment and as a result of a secondary search the subject of the search was found hiding inside a bedroom closet. Ex. 23 (ESU Report), Ex. 3 (Valentin Dep.) at 39:9-20.

- 10 -

Deny. Plaintiff denies owning 'vicious dogs'. (See Plaintiff's Exhibit B pg. 76 line 8 through line 11 and pg. 77 line 7 through 11 – Neighbors in the next building owned two Pitbull's, one Rottweiler.) Further, the individual allegedly found in the closet was not the suspect the defendants' sought nor was he arrested nor do defendants' offer any proof of the same. (See defendant ESU report Ex. 23. Said report also states 6 individuals from a different apartment on the same floor were also arrested.

38.     ESU officers escorted plaintiffs from the apartment to outside. Ex. 2 (Carrieri Dep.) at 59:4-5.

Admit as this was Carrieri's testimony only.

39.     Officer Carrieri saw Walston and Valentin exit the building, and was advised by ESU that they were recovered from inside bedroom one of the second floor rear apartment. Ex. 2 (Carrieri Dep.) at 86:7-25; Ex. 5 (Complaint Room Screening Sheet).

Admit as this was Carrieri's testimony only.

40.     An officer in a suit directed Valentin and her children into a car and escorted them back to the precinct. They were not handcuffed. Ex. 3 (Valentin Dep.) at 41:19-42:7, 53:9-13.

Admit.

41.     Valentin claims that an officer she cannot identify placed her and her two children in a cell at the precinct for about one hour. Ex. 3 (Valentin Dep.) at 53:14-54:4, 54:20-21.

Admit. Thereafter, they moved her and her children to an investigation room. See Defendants Ex. 3 (Valentin Dep. Pg. 54 line 22 through pg. 55 line 1).

42.     Officer Carrieri never saw plaintiffs' children either at 1029 Belmont Avenue or at the precinct. Ex. 2 (Carrieri Dep.) at 40:8-15, 48:4-49:3; Ex. 24 (Carrieri memo book).

Admit as to what is contained within Carrieri's testimony only.

43.     Plaintiffs' daughter was under one year old at the time; plaintiffs' son was three years old at the time. Ex. 3 (Valetin Dep.) at 54:5-10.

Admit. Except her son was nearly 4. Defendants Ex. 3 (Valetin Dep.) at 54:5-10.

44.     According to Valentin, her children did not understand what was going on when they were in the cell. Ex. 3 (Valentin Dep.) at 54:18-19.

Admit. However, Ms. Valentin testified her children were bothered. Defendants Ex. 3 (Valetin Dep.) at 54: 11 through 17.

45.     After an hour, Valentin and her children were placed in a room at the precinct, and an unidentified officer brought the children clean diapers and crackers. Ex. 3 (Valentin Dep.) at 54:22-55:12.

Admit. However, this was only done after Ms. Valentin complained. Defendants Ex. 3 (Valetin Dep.) pg 55 line 2 through 12.

46.     Valentin called her aunt who came and picked up the children. Ex. 3 (Valentin Dep.) at 56:7-56:17; Ex. 4 (Walston Dep.) at 136:13-24; Second Amended Complaint ¶¶ 64, 66.

Admit.

47.     On July 9, 2013, at about 10:35 A.M. Officer Carrieri arrested Walston (a.k.a. Jermal Austin) and Angelica Valentin for criminal trespass in violation of Penal Law § 140.15(2). Ex. 25 (Arrest Reports); Ex. 2 (Carrieri Dep.) at 27:6-15, 31:8-11.

Admit.

48.     Jermal Austin is an alias for Walston. Ex. 26 (OLPA).

Cannot Admit or Deny.

49.     Officer Carrieri arrested Walston and Valentin based on information he obtained from his supervisors, Sgt. Chadotsand and Lieutenant Delmon as well as his partner, officer Deigo Dotres. Ex. 2 (Carrieri Dep.) at 49:4-16, 60:18-61:5.

Admit as to what Carrieri is contained within his testimony only.

50.     Specifically, he was told that the owner of the building stated that no one was supposed to be living at the premises; his partner also called the complainant to again confirm that Walston and Valentin were not supposed to be living in the building. Ex. 2 (Carrieri Dep.) at 53:5-13, 60:18-61:12; Ex. 28 (People v. Valentin, 2013KN052266 and People v. Austin, 2013KN052265); Ex. 27 (owner supporting deposition).

Deny as inadmissible hearsay ie "...he was told...". Further, the affidavit was signed by the complaining witness on July 15, 2013 several days **after** the arrest. (See Plaintiffs' Exhibit Q.)

51.     He also was aware that there was an affidavit from the owner of the property granting the police permission to enter and remove any trespassers. Ex. 2 (Carrieri Dep.) at 61:18-24; Ex. 22 (owner affidavit).

Admit as to what Carrieri testified to only. Deny as to defendants' having an affidavit to enter the premises. (See Plaintiffs' Exhibit Q.)   Further, Carrieri understood that this was not the proper way to evict someone from their premises. (See Plaintiffs' Exhibit I pg. 53 line 5 through pg. 54 line 20, pg.. 57 line 15 through pg. 58 line 24 and pg. 62 line 16 to pg. 63 line 10).

- 13 -

52.     He based the arrest charges on what he was told by Sgt. Chadotsang and Lieutenant Delmon. Ex. 2 (Carrieri Dep.) at 70:19-23.

Admit as to what Carrieri testified to only.

53.     Officer Carrieri asked Walston and Valentin for their addresses and they provided addresses that were not the 1029 Belmont Avenue address. Ex. 2 (Carrier Dep.) at 64:7-13; Ex. 25 (arrest reports).

Deny.  Plaintiffs' had a valid lease for the premises.  (See Plaintiff's Exhibit H lease for the premises)

54.     Valentin's ID showed an address 305 Fountain Avenue Brooklyn. Ex. 3 (Valentin Dep.) at 14:14-15:5.

Admit as to at a certain time her NYS ID did list this as her address but plaintiff did not recall the time period.  Defendants' Ex. 3 (Valentin Dep.) at 14:14-15:5.

55.     Officer Carrieri spoke to the D.A. and relayed the information he had received. Ex. 21 (Complaint Room Screening Sheet).

Cannot Admit or Deny as to what Carrieri spoke to the D.A. about. Further, Carrieri did not testify to this. Objection, inadmissible hearsay.

56.     On July 9, 2013, P.O. Edgardo Carrieri signed the criminal court complaint against Austin and Valentin. Ex. 28 (People v. Valentin, 2013KN052266 and People v. Austin, 2013KN052265].

Admit.  However, the Supporting Deposition and Affidavit of the Owner were signed after the arrests of plaintiffs.  (See Plaintiffs' Exhibit Q and Defendants Ex. 27.)

- 14 -

57.     The owner of the building, M.M., signed a supporting deposition.  Ex. 27 (owner supporting deposition); Ex. 2 (Carrieri Dep.) at 85:2-14.

Admit.  However, the Supporting Deposition and Affidavit of the Owner were signed after the arrests of plaintiffs.    (See Plaintiffs' Exhibit Q and Defendants Ex. 27.)

58.     At arraignment plaintiffs learned that they were being charged with trespass and later produced a lease for the apartment at 1029 Belmont Avenue. Ex. 3 (Valentin Dep.) at 28:5-8; Ex. 4 (Walston Dep.) at 137:9-138:2.

Admit.

59.     On March 20, 2014, the criminal charges against Valentin were dismissed on motion of the district attorney.  Ex. 28 (People v. Valentin, et al., 2013KN052266).

Admit.

60.     On October 15, 2015, the criminal charges against Austin were dismissed. Ex. 28 (People v. Austin, 2013KN052265).

Admit.

December 28, 2013 Arrest (First)

61.     On December 28, 2013 at 2:13 AM, a 911 call was placed from at or about the intersection of Fulton Street and Logan Street. The caller reported that a black male punched a female in the face and forced put her in a gray van driven by a white female. This information was put over the radio by dispatch. Affidavit of Latasha Rose at ¶ 5; Ex. 29 (Miles Dep.) at 19:2-16, 34:9-18.

Cannot Admit or Deny as the Plaintiffs' were not present for the conversation. Further, Mr. Walston is not African American. Further, Sarah Gonzalez, the individual who operated the motor vehicle is Hispanic American.

62.     At 2:20 AM, a 911 call was placed from mobile phone number 347-525-2128. The dispatcher noted that he heard a lot of screaming and commotion. The caller provided a street address of 1029 Belmont Avenue. Rose Aff. at ¶6.

Cannot Admit or Deny as the Plaintiffs' were not present for the conversation. Further, Rose was not the individual who received the 9/11 call. She merely is reiterating statements that another, third party, made which is inadmissible hearsay. Further, she does not affirm under penalties of perjury the records she reviewed are true and accurate. Plaintiffs object to this information being used in support of defendants' motion to dismiss.

63.     Officer Lisa Miles heard the radio calls and responded to 1029 Belmont Avenue. Ex. 29 (Miles Dep.) at 20:8-12, 21:3-17.

Admit only as to the statements made by Miles at her deposition.

64.     When Officer Miles arrived at 1029 Belmont Avenue, she saw a grey SUV with two women, a man and a child in the vehicle. One of the women was screaming that she had called the police because the male in the vehicle (Walson) had been strangling her cousin (Valentin), the other adult female. Ex. 29 (Miles Dep.) at 22:10-18, 23:5-8; Ex. 30 (Complaint Report).

Admit only as to the statements made by Miles at her deposition.

65.     Walston was yelling "Fuck you. Shut the fuck up". Ex. 29 (Miles Dep.) at 32:17-33:3.

- 16 -

Admit only as to the statements made by Miles at her deposition. However, she contradicted herself stating that Walston said nothing and didn't know if he spoke with anyone else about the incident. See Defendants Ex. 29 (Miles Dep.) at Pg 28 line 7 through line 13.

66.   Officer Miles and her partner called for backup. More than five other officers responded. Ex. 29 (Miles Dep.) at 28:14-24, 30:12-31:3.

Admit only as to the statements made by Miles at her deposition.

67.   Officer Miles observed that Valentin had physical injuries, including bruises to her neck and a bump on her forehead. Ex. 29 (Miles Dep.) at 27:2-12; Ex. 4 (Walston Dep.) at 150:25-151:3.

Admit only as to the statements made by Miles and at her deposition.

68.   Officer Miles spoke to Valentin, who claimed that some girls had tried to jump her at another location. Ex. 29 (Miles Dep.) at 24:9-25:4.

Admit.

69.   Officer Miles concluded that Valentin's observable injuries were consistent with the report conveyed by dispatch on the radio and what the complaining witness told her at the scene, and based on this consistency, she arrested Walston. Ex. 29 (Miles Dep.) at 37:7-14, 70:4-8, 87:4-11, 102:3-102:19, 104:5-104:20., 105:18-106:6, 106:17-106:24.

Admit only as to the statements made by Miles at her deposition.

70.   Officer Lisa Miles arrested Walston for criminal obstruction of breathing, assault and harassment in violation of Penal Law §§ 121.11, 120.00(1) and 240.26(1). Ex. 43 (Arrest Report); Ex 29 (Miles Dep.) at 38:19-39:13.

Admit.

- 17 -

71.    Officer Miles processed the arrest and completed a Domestic Incident Report. Ex. 29 (Miles Dep.) at 41:12-42:8, 42:23-43:17; Ex. 31 (Domestic Incident Report).

Admit.

72.    At the precinct, an ambulance was called for Valentin, and P.O. Miles prepared an Aided Card for her. Ex. 29 (Miles Dep.) at 54:25-56:8, 57:3-57:19; Ex. 32 (Aided Card).

Admit.

73.    Valentin refused medical attention. Ex. 29 (Miles Dep.) at 57:20-58:10; Ex. 32 (Aided Card).

Admit.

74.    Officer Miles spoke to the ADA and provided her with all of the information she had regarding the case. Ex. 33 (Complaint Room Screening Sheet); Ex. 29 (Miles Dep.) at 80:12-17.

Admit only as to the statements made by Miles at her deposition.

75.    On December 28, 2013, P.O. Lisa Miles signed the criminal court complaint. Ex. 34 (People v. Walson, 2013KN097019).

Admit. Through Officer Miles paperwork, she alleges Ms. Hernandez was the complaining witness and the basis for the arrest of Mr. Walston that evening (See Exhibit M). However, on the criminal complaint which she swore out, she alleges Ms. Valentin was the complaining witness and there is no evidence whatsoever that Ms. Valentin ever claimed Mr. Walston was the perpetrator of her assault. Officer Miles admits this was done in error. In sum and substance Officer Miles committed perjury. (See Plaintiffs' Exhibit M).

- 18 -

76.     The criminal court complaint states that the complaining victim (Valentin) informed Officer Miles that Walston punched her, slapped her, and obstructed her airway. Officer Miles did not note the error at the time she signed the criminal court complaint. In fact, it was the witness, not the victim, who had told Officer Miles this information. Ex. 29 (Miles Dep.) at 94:24-96:20, 100:25-101:18; Ex. 34 (People v. Walson, 2013KN097019).

Admit and Deny.  Miles admits this error; however, Ms. Gonzalez never gave a statement to this effect.  (See Plaintiffs' Exhibit K and L.)

77.     On June 10, 2015, the criminal charges against Walson were dismissed under speedy trial provisions. Ex. 34 (People v. Walson, 2013KN097019).

Admit.

December 28, 2013 Arrest (Second)

78.     On December 13, 2013, at about 1:05 P.M. a 31-year-old man, S.A., complained to Officer Ramil Casimir that Walston entered his establishment and threatened him with a gun. Walston told the victim "next time is a bullet." Ex. 35 (Complaint Report).

Cannot Admit or Deny.  Casimir did not testify or offer an affidavit to this effect. Therefore, any alleged statements made by Casimir is inadmissible hearsay.

79.     Officer Casimir prepared a complaint report numbered 2013-075-20034 for the victim's complaint.  Ex. 35 (Complaint Report).

Admit to the degree Casimir allegedly created this report however said report is not in evidentiary form and is inadmissible.

80.     On December 28, 2013, Walston was already in the cell area in connection with Officer Miles' arrest of plaintiff, and a detective noted Officer Casimir's open complaint report against Walston. That detective asked Officer Michael Gessner if he would take the arrest

based on the complaint report. Officer Gessner agreed. Ex. 36 (Gessner Dep.) at 20:4-24:9; Ex. 37 (Arrest Report).

> Admit as to what Gessner testified to only.

81.     Upon reviewing the complaint report, Officer Gessner noted the identity of the complaining victim, and went to the gas station where he worked to meet with him. Ex. 36 (Gessner Dep.) at 27:3-9, 35:14-22, 40:7-20.

> Admit as to what Gessner testified to only.

82.     The victim told Officer Gessner that Walston would often come into the store and take merchandise, claiming that he was the protection for the store. On December 13, 2013, Walston took merchandise, and the victim had enough, and said something about it. At that point, according to the victim, Walston threatened him with a firearm. Ex. 36 (Gessner Dep.) at 29:3-6, 46:25-47:24.

> Admit as to what Gessner testified to only.  However, object to what was told to
> Gessner by an alleged victim as inadmissible hearsay.

83.     While at the gas station with the victim, Officer Gessner showed the victim a photo of Walston. The victim confirmed that this was the man who had brandished a gun at him, and the victim signed the photograph. Ex. 36 (Gessner Dep.) at 48:18-49:11; Ex. 38 (signed photo).

> Admit as to what Gessner testified to only.  However, object to what was told to
> Gessner by an alleged victim as inadmissible hearsay.

84.     Officer Gessner knew from the complaint report that there was video surveillance of the incident, but he never viewed it. However, he knew the ADA was aware of the video's existence. Ex. 36 (Gessner Dep.) at 25:5-7, 26:2-8, 26:15-20, 28:3-11, 28:23-29:6.

Admit as to what Gessner testified to only.  However, object to what was told to Gessner by the ADA as inadmissible hearsay.

85.     Officer Gessner arrested plaintiff for menacing in violation of Penal Law § 120.14(1) in connection with open complaint number 2013-075-20034.  Ex. 37 (Arrest Report).

Admit.

86.     Both Officer Gessner and the victim spoke to the ADA.  Officer Gessner relayed to the ADA what the victim had told him. Ex. 36 (Gessner Dep.) at 45:17-25, 46:25-47:24; Ex. 44 (Complaint Room Screening Report).

Admit as to what Gessner testified to only.  However, object to what was told to Gessner by an alleged victim and ADA as inadmissible hearsay.

87.     On December 28, 2013, Paralegal Danielle Spanakos of the KCDAO signed the criminal court complaint. Officer Gessner did not sign the criminal court complaint. Ex. 39 (People v. Walson, 2013KN097020); Ex. 36 (Gessner Dep.) at 30:25-31:3.

Admit.

88.     The criminal court complaint was based on information received from the victim, S.A.  Ex. 39 (People v. Walson, 2013KN097020).

Object as to what the criminal complaint 'was based on' as inadmissible hearsay.

89.     On January 3, 2014, the criminal charges against Walston were dismissed on motion of the DA. Ex. 40 (People v. Walson, 2013KN097020).

Admit.

90.     The criminal charges were dismissed because the victim did not cooperate with the prosecution. Ex. 41 (Court notes and victim affidavit).

- 21 -

Deny. The complaint was dismissed for the reasons stated in statement 89 above and what is reflected in plaintiffs' certificate of disposition. Remainder is inadmissible hearsay due to lack of authentication.

91. There has been no <u>Monell</u> discovery in this case. Declaration of E. Fudim

at ¶ 48.

Deny. See plaintiffs' Monell argument within plaintiffs' opposition under Municipal Liability heading.

Dated: New York, New York
May 16, 2017

Respectfully submitted

ANDREW C. LAUFER
Attorney for Plaintiffs
Law Office of Andrew C. Laufer, PLLC
255 West 36th Street, Suite 1104
New York, New York 10018
(212)422-1020(Phone)
(212)422-1069(Fax)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

No. 1:15-cv-4480-PKC-RLM

KEVIN JAMAL WALSTON, ANGELICA VALENTIN,
R.W., a minor, and P.N., a minor,

Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER
DAVID GRIECO, SHIELD #18061 OF THE 75th PRECINCT, POLICE OFFICER EDGARDO CARRIERI,
SHIELD #18255 OF THE 75th PRECINCT, POLICE OFFICER JOSEPH PATTON, SHIELD #895832
OF THE 75th PRECINCT, POLICE OFFICER LISA MILES, SHIELD #953108 OF THE 75th PRECINCT,
POLICE OFFICER MICHAEL GESSNER, SHIELD #940186 OF THE 75th PRECINCT and JOHN AND JANE
DOE ARRESTING OFFICERS OF THE 75th PRECINCT,

Defendants,

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED
## FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

LAW OFFICE OF ANDREW C. LAUFER

**Attorney(s) for Plaintiff**

Office and Post Office Address
255 W. 36th Street, Suite 1104
New York, NY 10018

Tel: (212) 422 1020
Fax: (212) 422 1069

To:

Signature (Rule 130-1.1-a)

Print name beneath

Service of a copy of the within is hereby admitted.

Dated:

Attorney(s) for:

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT
that an order of which the within is a true copy
will be presented for settlement to the HON one of the judges of the
within named Court at
on        at        M.
Dated,

Yours, etc.

Law Office of Andrew C. Laufer